Bollinger. Good morning, my name is James Bollinger and if it pleases the Court, what I'd like to do is, well this case involves two appeals, one on provisional rights and another on the district court. I want to jump to the non-infringement holding by the district court and I want to start with a discussion regarding the district court's determination of the term deleting substantially all gang content and what that term means in context to this patent. Can I first ask you what the relationship is between these two things? So with respect to the provisional rights determination, is it your argument that there was activity before the patent issued that was different in kind as it relates to infringement than after the patent issued? Absolutely. Two periods of time. Well, I understand there are two periods of time, but the question is that there are two different categories of activity. So if, in fact, we were to find, for instance, I know you don't want us to, but if we were to find there was no infringement after the patent was issued and that the claim constructions were correct, what impact would that have on the provisional rights determination? Two different analysis altogether. The provisional rights involved a protocol for preparing these condensed games that was different and changed when the patent issued. The defendants actually made some modifications after the issuance of the patent and that's what they're relying on for their non-infringement. Well, I understand they made some modifications as it relates to the subjective objective argument, but was the protocol different as it relates to the accretion or deletion argument? No, it wasn't. I'm not positive of that, but I'm pretty sure it never really was an issue before the court. It hasn't been addressed by the court. But I don't know the answer to that off the top of my head, but I think you may be right. It might have been the same protocol. Okay. Deleting. I thought it was different. I thought that before the protocol was to leave in every final pitch. That was clearly true. But I think the editing process that was applied and the distinction the district court made on the editing claim that I'd like on the deleting step, the district court actually found and ruled that deleting means in this context of this particular patent, a three-part process. You make a second copy of the complete game, then you erase the portions you're not interested in, the undesired portions, and then you remove the time gaps. And the interesting thing is, is that that construction was never proposed by either party. And in fact, what the defendant had proposed was something completely different. And if you look at their motion for summary judgment, you'll see that they were proposing the notion that deleting means destructive editing. And destructive editing is just the cutting and splicing of tape and moving things together to form a final condensed game that way. They said we were limited to that, and they submitted a declaration by Joseph Inzerillo, who was their employee, but also a person responsible for their video editing process. And at paragraph 16 through 18, and it's the appendix 39-59, he describes very detailed terms about the destructive editing theory that he was proposing that deletion should be defined as, and contrasted it with the... Hold on a second. The deletion language in the claim was added during the original prosecution, correct? A claim was canceled, and then a new claim was used that included the deletion language. So your original claim was claim eight, and it said leaving only. Exactly. And then a new claim said deleting. Exactly. And that change was made, was it not, to distinguish the prior art? No. No? It was a clarification. It was not involved in distinguishing prior art. Why was the clarification needed? I think the original claim had been objected to as vague and ambiguous, and I think it was a claim that had some issues in terms of its clarity. And so the new attorney that came in... Excuse me? Wasn't the claim rejected on the basis of prior art, and wasn't this change made to distinguish the prior art? No. It was rejected on prior art, but it was not that change. A completely new claim was I mean, this thing went to an appeal, so it was never actually allowed by an examiner. But there was never an argument that the prior art doesn't show destructive deletion. The prior art, the entire argument in getting this case allowed was directed to the notion of the content that was remaining versus the content that was removed. And that was the basis of gaining allowance, not the particular protocol or steps in the editing process by itself. Well, let's just suppose hypothetically we were to disagree with your reading of the prosecution history and conclude that the deletion language was added to distinguish the prior art. Wouldn't that be a problem for you in the sense that here the Major League Baseball approach does not rely on deletion, but rather accretion? It's our position that deletion covers what Major League Baseball provides, whether it was added to avoid prior art or not. And the reason that is is because deletion in the digital world is understood to be the notion of excluding content, removing content from a final edited. When you delete a file on your computer, what you're doing, that information is not wiped out off the computer. That's still there. All you've now done is remove the pointer to that particular file. It's not a destructive process as they've characterized deletion in this claim. But forget the destructive process. There seems to, if you accept my hypothetical about the reason for the amendment, there seems to have been some substantive difference between Don't we have to construe deletion as meaning something different from editing? I disagree with that because it's not just editing. It didn't say edit the file. It said edit by leave only, which indirectly is the same thing as deletion. When you leave only, the other stuff is gone. So it has to go somewhere. It has to be removed. It has to be excluded. And when they were talking about leave only, deletion, they were talking about the content, not the medium it was on. They were talking about what was being retained and what was being excluded in the final condensed game. But the problem is that you have a method claim. And the method that you claim is first you create a program recording and then you edit it by deleting from that existing program recording certain information, regardless of how you define what that certain information is. That's the method that you have claimed. So if what Major League Baseball is doing doesn't include those two steps, then how is there infringement? There is, because they do practice deletion. That's the point I'm making. Persons skilled in this art understand deleting to mean the removal, exclusion of content. They presented their argument to the court, and the court said that's borderline frivolous. But they thought the court thought it was our argument. No, that was the construction argument that they said was borderline frivolous. That's exactly right. But that construction argument was that deleting is destroying. And that's how you are suggesting to me it should be construed. No, removing. Or excluding. That's what we believe it means. It means to exclude content from the final condensed game. That's the critical thing. But isn't there a difference? I mean, what the court found that your opponent does is to take content as it's occurring and choose positive content that it wants to keep and to create the recording from. Isn't that the distinction that the court drew? Their expert, Ms. Cirincerello, testified that there's no difference between taking content and keeping it or removing content and ending up with the same thing. No difference with the end product, but you didn't claim the end product. But we did. The end product is what that editing step results in. The editing step by itself is defined by what is left behind after you edit. It's an editing process. Even if the end products are the same, you agree that there's no infringement if those method steps aren't formed, right? Because it's a method claim. It's a method claim. There wouldn't be infringement unless there was a distinction. I mean, if there was a distinction between the steps that they do and what our patent covers. Our patent specification makes clear that when you look at deleting, when you read the specification, it says we edit to retain content. We include only those plays that are outcome determinative. The word deleting is not in the specification. The notion of destructive deleting doesn't exist in the patent file history. The prior art that's being relied on. Destructive deletion, that's not what we're talking about. The lower court rejected that. That's their argument. That's what they presented to the lower court as the definition of deletion. No, the lower court rejected that. I understand that. And adopted a different definition. Well, then there's something, and the question is, who sponsored this definition the lower court came up with? And does the record support it? And the record doesn't support it. The record supports, if you look at our declaration. First of all, with respect to sponsorship, lower courts are free to adopt a construction that has not been offered by either party. It's not a pick from column A or pick from column B. Judge O'Malley, you're absolutely correct. All right, so is there support in the record and the specification for the lower court's construction? There isn't. There's none. You look at the intrinsic record, there's nothing that supports a time gap removal. There's no such thing. It doesn't even look like it. I mean, there's no evidence that it would even work. How do you remove time gaps? There's no way. Their expert said, that's not, nobody's proposed that. We have an expert of record saying there are two types of editing. One is destructive deletion, which is what the court rejected as borderline frivolous. And the other is this nondestructive process, which is basically what everybody else, everybody has done since the beginning of time, and what our claim covers, notwithstanding the notion that- How do the accused products delete, in your view? It's what's, they start with a full game. And as it's, they grab portions of the game and they put it into another record. And their technical person on this, Din Mann, said that that's deletion. The stuff that's left behind is deleted from the final game because it's left behind. Let me just ask you a couple of questions before we run out of time about the other aspect of this, where the court construed the method claim of the patent to require the inclusion of the results of every final pitch. And the method as described by Major League Baseball, the method it uses, does not do that. So why isn't that a legitimate ground for a finding of non-infringement? It's to the extent that they practice a method that includes, embraces less than all final pitches, and they do, that is avoiding the claim as construed right now as literally infringe. That wasn't the basis of the court's ruling, though. And we have an argument, and the court, I think, has acknowledged the weight of the argument, that it's infringing under the doctrinal equivalence because all they've done is drop a handful of final outs so it has less than all final outs. And because of that, they are outside the scope of the claim. But a handful of final outs, isn't it true that only 15% or 15 out of 4,000 or something actually had all final outs? Well, that's the total number of games that included all final outs. But the games that don't have all final outs, there's 54 outs in a game. And there's a number of games that have 52, 51 outs. And so they've dropped a few of those to avoid that literal reading of necessary of all final pitches is what the requirement is. And by doing that, they are practicing the invention, in our view, because they're indistinguishable. And so we have a doctrinal equivalence, and the court- Did you put in a declaration on the doctrinal equivalence? Yes. And what did it say? It said that the games are indistinguishable for these points, and it listed out particularized common features of the game and the editing step. But that was from the inventor, right? You didn't have any other expert? No, we did have an expert. We had two other experts. Chad Edwards was the expert on video. I'm running out of time. I was hoping to reserve some. But you didn't have an expert on DOE. You're not allowed to sit down when we have questions. I know. You didn't have an expert on DOE, did you? Yes, we did. And it was the inventor. And the court accepted the competency of the inventor, but declined to accept the weight of the testimony because of particularized- Did the inventor's declaration do a limitation-by-limitation analysis of the claim? It looked at the editing step, which was the only limitation we were concerned with on doctrinal equivalence. All the other limitations are met. And it looked at it. It examined the games before and after. How are all the other limitations met if they don't have every final pitch? Because all the other limitations include recording the full game, editing the game to remove all other content. Substantially all other content. They don't remove all other content, do they? They retain a lot more content than you do. No, they remove every non-final pitch. It's all gone. The only thing in their games are final pitches. They're just saying they have less than ours. But it says deleting substantially all game action other than when there's a final pitch. Absolutely. So if they don't follow that, then there has to be particularized testimony on doctrinal equivalence on that particular limitation, right? Yes, and we do. We have that. Where? It's in the declaration by Greg Mockery. Yeah, but where? It wasn't—I'm in negative territory here. 40994100. Which volume is this? That's probably the second to last. Three. What page? 40994100. Okay, what paragraphs are you referring to? If you go to paragraph 18. Is this on 4100? Yeah. Okay. What paragraph? It's paragraph 18. And this is based on what he reviewed above, obviously. Okay. So he has basically a single sentence saying that the differences in the method are insubstantial. Okay. Any further questions? No. No. All right. Thank you, Mr. Bollinger. We'll give you two minutes for rebuttal. Thank you, Your Honor. Ms. Rigsby? May it please the Court, Cynthia Rigsby appearing on behalf of Major League Baseball Advanced Media. Your Honors, if the facts were as Mr. Bollinger stated them many times here today, this might be a different case. But as is evident in the red brief that we submitted, there are numerous references made in the arguments that really aren't supported by the actual factual record. The absence of factual support for their claims of infringement and their claims for substantial identity under provisional rights were the reasons behind the judges' thorough and thoughtful decisions. The district court decision should be affirmed. With respect to infringement, there are no new claim constructions being offered by the judge. The appellant says the judge referenced this objective idea and strictly objective, and there was no support for that in the record. But I would direct you to page 12 of the red brief where we identify point by point what they actually said in the prosecution. They not only said and they admit that their process is objective, they said to the patent office it was totally objective. They said it was completely objective. The court refused to find argument-based estoppelance, that there may have been subjective or objective language in the prosecution history, but it did not amount to a disavowal. Right? That's correct. But the court did find that the method in construing the claims was an objective method. Did you actually ask for the court to construe the claims to include an obligation that the method be objective rather than subjective? We didn't use those exact words, but that was precisely... So the answer is no? No, we didn't ask that the court say this is an objective method, but we asked that the court construe the claims to require that certain criteria was in every game. Right, so you asked the court to construe the claim to require an end result that included certain criteria, but there was never a request that the court draw this objective-subjective distinction. I think you're correct in that we didn't ask for those precise words. I think that the discussion around what the term substantially meant in the claim construction hearing on Markman was whether or not substantially allowed some discretion as to whether or not all the final outs had to be permitted. And so when the judge said that objective encapsulated, A86, encapsulated this idea that all final outs had to be in, it shows that what she was discussing when she references objective was this requirement that Romanets 1, 2, and 3 of the claims had to be included as part of the edited reporting. But she went beyond that. I mean, she talked about all of the instructions that you have given to your editing personnel. I mean, it certainly does feel like this was a studied effort to design around this patent. And the question is whether or not it was accomplished, I guess. But in the beginning, you didn't have all of those subjective requirements for your editors, did you? There's no record evidence of that. There's no record evidence of how the editing was accomplished prior to 2009 because at the time, the provisional rights decision had come out, right, and there was already no issue as to whether or not we infringed in 2009, 2008, 2007. So there are repeated statements that we infringed before 2009. There's actually no record evidence to support that. What we do know is that the provisional rights, the policy underlying that, is we're supposed to find information in the public record to help us determine whether or not to avoid the claims. And so here there's sort of a backhanded argument that apparently if Major League Baseball Advanced Media tried to avoid the claims, they did something wrong. I think as the district court properly stated, if we tried to avoid the claims, we did something right. That's what we're supposed to do. And by the public notice function that's provided in the published claims that indicate what claims they're attempting to get, we know whether or not we can infringe those claims or whether we can avoid infringement. But I think the record is also clear and undisturbed that Major League Baseball Advanced Media was the first one to come up with this idea of condensed game. There's a declaration by former Commissioner Bob DuPay to that effect, and that's not been challenged. That's a different question. That's not relevant to the infringement issue. I think it's not relevant. I agree with you. I think the problem is that there's a lot of atmospherics around this as though there was some sort of attempt to take the invention of the inventors here. But what the clear evidence shows is, A, we don't infringe. We don't delete substantially all. We form a creative cut-and-paste method. And there's no hiding the ball on this issue in discovery as suggested. What about BaseballQuick's reliance on the statement of one of your employees that you do delete? I don't think that there's any proper reliance on that. So it doesn't create a genuine issue of material theft? It doesn't create it because there's overwhelming evidence by the actual technical employees who produce the condensed games, how they're produced. We went beyond just saying we don't infringe. You mentioned the answer that the employee wasn't necessarily using the claimed term in the correct sense. I think that's also the answer. He was talking in general about a process that was looked at in order to determine whether or not an auditing process, to determine whether or not all the final outs were in there. But the evidence— I guess my problem with this is you say that you cut-and-paste, and you create something. But at some point, you audit it to make sure that you don't have all infringing elements, and so you take things out, right? I don't think there— I mean, the auditing process necessarily requires deletion unless the audit says it's perfect. The evidence that BaseballQuick has pointed to is the fact that we have an editing process. There's no evidence of the record that says that any deletion has occurred as a result of this editing process. What we know is that the games are generally created as they are occurring. And that was identified by deposition witnesses before Markman, who explained we build the condensed games. In fact, Mr. Bullish— The witness, his job was to know how the auditing process works, right? And what he testified to is that as part of the auditing process, we go in, and we make sure that all of these subjective requirements have been satisfied, and we pull things out if they don't satisfy the subjective requirements. I'm not sure that's exactly Mr. Kaplan's testimony in that regard. He did identify that there was an auditing process to make sure that the games were being edited correctly because there had been a total of 15 games that were identified in the litigation as having included all of the final outs, contrary to what the instructions were to the editors. But the instructions here are more than just eliminate routine outs. They're detailed instructions that describe how the claims are to be processed. And here there's an absence of any evidence by any competent witness who says the instructions that Major League Baseball follows are equivalent to the claims. They point to, and we just looked at, the testimony of Mr. Mockery. I don't agree that Mr. Mockery was identified as a competent witness. The judge said that she would reserve that question as to whether or not he was competent. But we pointed to the decision, Judge Dyke, that you authored, Aquatex, and we made particular reference to the fact that you needed competent opinion testimony based on a linking testimony, right, on a limitation-by-limitation basis, indicating that the evidence here was equivalent. And there's no such testimony. Even this paragraph 18 that they referenced, the witness says, Condensed Game 3, one of Major League Baseball's games, is equivalent to Condensed Game 4, another one of Major League Baseball's games. That's not the kind of equivalence testimony that the decision in Aquatex suggests. What we need in terms of the equivalence is that linking testimony that says, I have reviewed the process that Major League Baseball says that they follow. We identified the specific software that we use early on in the litigation, the specific software that we use for editing. There was no effort by Baseball Quick to identify that software as not including the deleting process. Again, deleting is not something that we hit the ball on during Discover. We specifically said, we need this claim construction that has the deletion concept because deletion's important and we don't delete. Set it in open court. And we said that following testimony by witnesses who said, we have an accretive building process where we build the games as the games are being construed. And so the idea that they didn't know that they were going to have to come up with evidence of deletion, either on direct infringement or indirect infringement, just doesn't follow through from the record here. What we see is they didn't offer evidence of deletion. They, therefore, couldn't get past a motion for summary judgment. Summary judgment was properly granted. Can I ask you about the provisional issue for a minute? Yeah. What's your response to Baseball Quick's argument that Published Claim 8 should be interpreted under the broadest reasonable construction and that under that standard it's the same as Patent Claim 3, and really more focusing on the broadest reasonable construction? Right. The broadest reasonable construction argument was advanced in the reply brief. It wasn't advanced in the opening brief. It also certainly wasn't fully developed in the opening brief. But I think what was significant is at the summary judgment hearing, plaintiffs told the court they weren't sure what standard should be applied, and that's at A3691 to 92. So they can't now come into this court and argue error based on the broadest reasonable construction when they told the district court, we're not sure if you should apply the broadest reasonable construction standard. I don't think that it matters at the end of the day what standard you apply. Leave only, there's no reasonable construction of leave only to mean leave not only. Leave only is pretty clear on its face in terms of what those terms mean. Do you know what the status of the re-exam is? There has been a motion by Baseball Quick for a new hearing, and that has not yet been ruled on. We assume that once that is decided, then it would be ripe for appeal, which is why we made that case known to you. With respect to provisional rights, again, I think the law is clear. I think the analogy to Seattle Box, the analogy to Latrim, the analogy to Slimful that we detail in our briefs are pretty clear. I think one thing that can get confusing on the provisional rights is that the law is that the scope of the claims must be identical, so substantially identical means that the exact language doesn't have to be the same, but the scope, in fact, must be identical. It's not the scope is not substantially identical. The scope is identical, and Slimful says that explicitly. I do see that misstated sometimes in district court decisions, and so I point out that particular point. I think there's a reference by Baseball Quick to Published Claims 5 and 10 in their reply brief. I would say Published Claims 5 and 10 are irrelevant to the analysis. This is a claim-by-claim process. You don't get to add up all the published claims and see whether or not within there somewhere is something that appears in the actual issued claim, and there's a clear authority for this in the House of Representatives report that was cited at 23 and 31 of the red brief, 33 of the blue brief. We didn't cite this exact language, but we definitely cited this provision, and they say there that at least one infringed claim in the published patent application must be substantially identical to at least one claim in the patent. It's a claim-by-claim analysis. You don't add them up, and I think that's an important point to understand in the provisional rights. Unless there are further questions on infringement, Doctrine of Equivalence, provisional rights. Okay. Thank you, Ms. Briggs. Thank you. Just briefly on provisional rights. I appreciate the two minutes, Your Honor. Specifically, the broadest reasonable construction was presented in the lower court, and we think it's the one distinction. I haven't seen a case on it. It's interesting because everyone talks about intervening rights, and you look at the claim before it goes into re-exam, then you look at the claim after it comes out, and you do that comparison. Provisional rights are a little different because the before is when it's in the broadest category, broadest reasonable construction, and that should be the right standard for analyzing it. And here, as it relates to the term substantially, and that term and the way it's used in the later claim, you saw the examiner looked at Claim 5 and in Claim 10, and then looked at the language leave only in Claim 4. You couldn't construe it as so narrowly as they're attempting to do so now because those additional dependent claims would now be a problem. They wouldn't be consistent with claim differentiation and the notion of a dependent claim being narrower. More importantly, the patentee clarified it and added the language substantially, so it was clear that those dependent claims were now—the independent claim was now broad enough to support those two dependent claims,  Now, the other one, the other provisional rights issue, relates to obtaining subscribers for viewing. And I just want to bring the Court's attention to something that the defendant had cited in their brief, and it was specifically at A2022, and it was the actual statement by the attorney prosecuting and characterizing what obtaining subscribers for viewing meant. And it's precisely as you'll find in Published Claim 8. It's actually not precisely, but it's very similar language. It goes to this notion of offering the edited recording for subscribers for viewing, and, of course, the pending Claim 8 had that language delivering to subscribers. So offering to subscribers, delivering to subscribers, we believe is the same scope and of identical scope. But it is Claim 8. I'm not relying on any other claims. You're out of time. Thank you. Thank you. Before we submit the case, the briefs appear to have improper confidentiality markings in them, that you have marked things as confidential, which are discussed in the district court opinion. We expect more care in confidentiality markings. We take this seriously. Whether we're going to ask you to file new briefs or not, we'll determine after the argument. It seems like you're directing that to me, and I apologize if that's the case. It wasn't our confidential information. We don't have any confidential information in this case. All right. Thank both counsel. The case is submitted. Thank you.